**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KHALID JAMSHED, | : | |
| | : | |
| Plaintiff, | : | C.A. Number: |
| | : | |
| v. | : | |
| | : | **Trial By Jury Demanded** |
| NEW CASTLE CHICKEN, LLC and | : | |
| NEWARK CHICKEN, LLC | : | |
| | : | |
| Defendants, | : | |

## COMPLAINT

### PARTIES

1. Plaintiff, Khalid Jamshed ("Mr. Jamshed" or "Plaintiff"), is a resident of the State of Delaware residing in New Castle County, Delaware.

2. Defendant, New Castle Chicken, LLC ("New Castle") is a Limited Liability Company of the State of Delaware. Its Delaware Registered Agent is the Registered Office Service Company located at 203 NE Front Street, Suite 101, Milford, DE 19963.

3. Defendant, Newark Chicken, LLC ("Newark") is a Limited Liability Company of the State of Delaware. Its Delaware Registered Agent is the Registered Office Service Company located at 203 NE Front Street, Suite 101, Milford, DE 19963.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over certain claims herein pursuant to 28 USC §1331, because claims brought under 42 USC §1983 arise under the laws of the United States. In addition, Mr. Jamshed complains of violations of federal law, specifically, 29 USC §§ 621 *et. seq*, the Age Discrimination in Employment Act of 1967 ("ADEA") and 42 USC § 12101 *et seq*.,

1

Americans With Disabilities Act.("ADA"). Finally, the Court has supplemental jurisdiction pursuant to 28 USC §1367 over all other claims contained herein. The unlawful employment practices alleged herein were committed in the District of Delaware.

5. Venue is proper in this judicial district for all causes of action stated herein, as the acts alleged as the basis for these claims took place within the boundaries of the district pursuant to 28 USC §1391.

## BACKGROUND

6. Mr. Jamshed is a 48 year old United States citizen with approximately 8 years of experience in the food service industry.

7. At all times relevant, Mr. Jamshed was an employee of New Castle and/or Newark. Mr. Jamshed's employment with Defendants began in 2009 when he was hired as a store manager for two Popeye's restaurants. One of the restaurants was located at 1505 N. DuPont Highway in New Castle Delaware (the "New Castle Store") and the other was located at 1700 Capitol Trail, Newark, Delaware (the "Newark Store").

8. Mr. Jamshed's performance as a manager was outstanding. The Newark Store was grossing approximately $927,000 in 2009 when Mr. Jamshed became manager. Under Mr. Jamshed's leadership, the gross income at the Newark Store rose to $1,032, 000 in 2011 due to Mr. Jamshed's efforts as manager.

9. The New Castle store was grossing approximately $1,370,000 in 2009 when Mr. Jamshed became manager. Under Mr. Jamshed's leadership, the gross income at the New Castle Store rose to $1,697,000 in 2011 due to Mr. Jamshed's efforts as manager.

10. Despite his outstanding performance, Ali Butt, who has an ownership in the two

Defendants, ridiculed Mr. Jamshed during the course of his employment and made disparaging remarks about his age and his appearance.

7.     In 2012, the harassment increased after Mr. Jamshed attempted to purchase a Popeye's franchise with other potential investors.  During that time, Mr. Butt not only continued to make disparaging comments to Mr. Jamshed but, in fact, he physically assaulted Mr. Jamshed in December of 2012.

8.     At the time of the assault, Mr. Butt grabbed Mr. Jamshed by the throat, pushed him against a wall and threatened to kill him.

9.     As a result of the attack, Mr. Jamshed suffered injuries to his back and neck.  In addition, he was traumatized by the attack, suffering thereafter from anxiety and stress.

10.    On or around February of 2013, Isselahdeen Chamma became Mr. Jamshed's supervisor.  After that, and despite his outstanding performance, Mr. Jamshed was increasingly derided as being too old to perform his job duties by both Mr. Chamma and Mr. Butt.  Mr. Chamma and Mr. Butt often made negative comments about Mr. Jamshed's age and ridiculed him, claiming that he was old looking and that he had wrinkles on his neck due to his age. They would say that they needed to hire a younger crewmember.

11.    While Mr. Jamshed was constantly questioned about his appearance, younger employees were not treated the same as Mr. Jamshed.  Mr. Butt and Mr. Chamma made no disparaging comments about younger employees, nor did they question their appearance in any way. It was clear that they preferred younger employees because of their appearance.  Defendants wanted younger employees because they could pay them less than employees who were older and had a longer work history.

12. After the assault by Mr. Butt in 2012, Mr. Jamshed suffered from heart palpitations and anxiety. In June of 2013 Mr. Jamshed's cardiologist diagnosed him with Atrial Fibrillation and placed him on a heart monitor which he was required to wear 24 hours per day.

13. Other than a slight change in Mr. Jamshed's appearance, the heart monitor did not interfere with Mr. Jamshed's ability to perform his duties and, in fact, was barely visible. Nonetheless, Mr. Chamma questioned the need for the heart monitor as well as Mr. Jamshed's ability to perform his job duties while wearing it. Thus, despite the fact that Mr. Jamshed's physician had prescribed that he wear it, Mr. Chamma objected to Mr. Jamshed wearing it at work and complained that Mr. Jamshed was wearing it for too long during the period that he used the monitor.

14. As a result of the harassment he was subjected to, Mr. Jamshed filed a complaint with the U.S. Equal Employment Opportunity Commission (EEOC) in August of 2013. When Mr. Butt and Mr. Chamma were notified of the EEOC complaint, they met with Mr. Jamshed and apologized to him. They promised that they would not mistreat him further and urged him to withdraw his complaint. Based on the apologies he received and the promises made by management, and because he needed to work to support his family, Mr. Jamshed withdrew his complaint.

15. Once the EEOC complaint was withdrawn, and contrary to the promises made by his managers, the harassment continued again and, in fact, became worse. Despite his heart condition, Mr. Jamshed's hours were frequently changed and he was often required to work 60 to 70 hours per week. He was forced to wash dishes and carry heavy boxes of food, even though these tasks were not part of his job as a store manager. Defendants consistently understaffed the stores where Mr. Jamshed was manager, and he often had to cook and perform other staff jobs. During all this time, the comments about Mr. Jamshed's age and appearance continued.

16. At one point, Mr. Chamma sent Mr. Jamshed home from work because he claimed that the heart monitor "did not look good."

17. At no time, did the defendants or their management personnel offer to accommodate Mr. Jamshed in the use of his heart monitor. Moreover, they wrongfully claimed that the monitor rendered him unfit to perform his duties.

18. Unwilling to further tolerate the constant harassment, Mr. Jamshed filed a second complaint of discrimination with the EEOC on February 27, 2014. Four days later, on March 3, 2014 Mr. Jamshed reported to work and was told by his District Manager, Awais Chamma to go home, that he was fired. No reason for his termination was given, nor were there any outstanding discipline or work performance matters. Indeed, prior to his dismissal, Mr. Jamshed was never issued either a written or verbal warning regarding his work performance. Thereafter, Mr. Jamshed filed a complaint with the EEOC charging that his firing was in retaliation for filing his complaint.

19. Right to Sue letters were issued in both cases by the EEOC on February, 1, 2016.

20. At all times relevant, Mr. Jamshed was a loyal and capable employee. Through Mr. Jamshed's efforts, the Popeye's stores that he managed increased their sales and profitability considerably during the period that he managed them.

21. As a result of Defendants' actions, Mr. Jamshed lost his employment and has effectively lost the managerial career he had worked and sacrificed for during his time as an employee of Defendants.

**COUNT I**
**ADEA VIOLATION**

22. Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1 through 21 above.

23. 29 USC § 623 makes it unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

24. Despite the prohibitions of the ADEA, Defendants, through their owners and agents, singled out Mr. Jamshed, harassed him in the workplace and made negative comments to him about his age and ability to work. They also criticized him for what they characterized as his old and wrinkled appearance and added to his workload as described previously herein.

25. Defendants have violated the ADEA by discriminating against Mr. Jamshed with respect to his age and then by discharging him when he complained to the EEOC about Defendants' discriminatory treatment of him

26. The Defendants through their actions as described above have violated the ADEA and the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*

27. As a result of Defendants' actions, Mr. Jamshed has suffered and continues to suffer:

   A. Great pain and emotional distress, harm, and anguish;

   B. Loss of income and benefits.

   C. Loss of employment and career opportunities.

## COUNT II
## VIOLATION OF ADA

28. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 27 above.

29. The Federal Government has recognized the discrimination occurring against persons

with disabilities in the workforce. To combat this discrimination, it has adopted the Americans with Disabilities Act of 1990 (ADA) to protect employees with disabilities from discrimination and to permit them to work with reasonable accommodations, free of discrimination, based on their abilities. Title I of the ADA, 42 U.S.C.S. § 12101 *et. seq.* prohibits discrimination by employers regarding the terms, conditions, and privileges of employment.

30. The Defendants have discriminated against Mr. Jamshed in exactly the way that the ADA was designed to combat because of his disability as described previously herein.

31. Mr. Jamshed's heart condition is a qualified disability within the meaning of the ADA but it did not inhibit his ability to perform his normal job functions, with reasonable accommodations. Nonetheless, Defendants made Mr. Jamshed's job duties more difficult and even sent him home from work because of his heart monitor and medical condition.

32. As a result of his disability, Mr. Jamshed was discriminated against while working and ultimately terminated.

33. The Defendants through their actions as described above have violated the ADA and the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*

34. As a result of Defendants' actions, Mr. Jamshed has suffered and continues to suffer:

    A. Great pain and emotional distress, harm, and anguish;

    B. Loss of income and benefits.

    C. Loss of employment and career opportunities.

## COUNT III
## RETALIATION

35. Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1 through 34 above.

36. When Mr. Jamshed complained to the EEOC of his treatment by Defendants and of Defendants; illegal acts of discrimination against him, Defendants terminated his employment.

37. Defendants' actions constitute illegal retaliation as that term has been defined by law.

38. As a result of Defendants' actions, Mr. Jamshed has suffered and continues to suffer:

    A. Great pain and emotional distress, harm, and anguish;

    B. Loss of income and benefits.

    C. Loss of employment and career opportunities.

## COUNT IV
## VIOLATION OF DELAWARE LAW

39. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 38 above.

40. 19 *Del C.* § 710 *et. seq.* bars discrimination against employees in certain protected categories and provides remedies against employers who illegally discriminate.

41. 19 *Del C.* § 711(a) specifically prohibits discrimination against an employee due to his age. Despite this prohibition, Defendants have violated 19 *Del C.* § 711 by discriminating against Plaintiff with respect to his age.

42. 19 *Del C.* § 711(f) prohibits the discharge of an employee who has "testified, assisted or participated in any manner in an investigation, proceeding, or hearing to enforce" the provisions of the above-referenced statute. Nonetheless, Defendants discharged Plaintiff when he complained to the EEOC about Defendants discriminatory treatment of him.

43. The Defendants are liable for their illegal treatment of Mr. Jamshed by discriminating

against him with respect to his job duties and assignments on the basis of disability and for terminating him when he complained of Defendant's discriminatory treatment of him.

44. As a result of Defendant's actions, Mr. Jamshed has suffered and continues to suffer:

    A. Great pain and emotional distress, harm, and anguish;

    B. Loss of income and benefits.

    C. Loss of employment and career opportunities.

## COUNT V
## GOOD FAITH AND FAIR DEALING

45. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 44 above.

46. At all times, New Castle and Newark owed Mr. Jamshed, its employee, a duty of good faith and fair dealing.

47. As a result of Defendants' lack of good faith and fair dealing, Mr. Jamshed irretrievably lost his managerial position and the opportunity to expand and advance in that position.

48. As a result of Defendants' actions, Mr. Jamshed has suffered and continues to suffer:

    A. Great pain and emotional distress, harm, and anguish;

    B. Loss of income and benefits.

    C. Loss of employment and career opportunities.

DATED: April 28, 2016                    BIGGS AND BATTAGLIA

                                        By:  /s/Robert D. Goldberg
                                              Robert D. Goldberg (ID # 631)
                                              921 North Orange Street
                                              Wilmington, DE  19899
                                              (302) 655-9677
                                              Goldberg@batlaw.com
                                              *Attorneys for Plaintiff*